No. 39,851

HAROLD R. DINGES, JR., et al, *Appellants*, v. BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, and THE CITY OF FAIRWAY, KANSAS, *Appellees.*

(292 P. 2d 706)

Opinion filed January 28, 1956.

*Herbert L. Lodge,* of Olathe, argued the cause, and *Howard E. Payne,* of Olathe, and *Philip I. Levi,* and *Solbert M. Wasserstrom,* both of Kansas City, Missouri, were with him on the briefs for the appellants.

James R. Hoover, of Prairie Village, argued the cause, and James H. Bradley, Johnson county attorney, was with him on the briefs for appellee Board of County Commissioners of Johnson County, Kansas.

James B. Pearson, of Olathe, argued the cause, and John R. Keach, of Mission, was with him on the briefs for appellee City of Fairway, Kansas.

The opinion of the court was delivered by

Thiele, J.: This appeal arises from the refusal of the trial court to enjoin a road improvement project.

The action was commenced on November 18, 1953, the sole defendant being the board of county commissioners. In their petition the plaintiffs alleged the status of all parties and that on September 16, 1952, the defendant attempted by resolution to create a certain road benefit district upon a petition filed, the petition and resolution being incorporated by reference; that notwithstanding the fact the proposed benefit was limited to unincorporated areas, the petition requested and the defendant board purported to establish an improvement not limited to the benefit district but on the contrary extended beyond the district and into the incorporated area of the city of Fairway; that the order attempting to provide for such road improvement beyond the limits of the benefit district was void for the reason that the attempted improvement by the defendant board into the city of Fairway was contrary to the provisions of G. S. 1949, 68-701 to 706 inclusive, in that the board did not have power to establish a road improvement which lay within the incorporated limits of the city of Fairway. It was alleged that since in February, 1953, the city of Fairway was a city of the second class. (As is shown later it was a city of the third class when the improvement project was initiated.) It was further alleged that on September 16, 1953, detailed plans were filed with the defendant calling for the acquisition of a sixty-foot right of way including such a right of way within the city of Fairway, and on October 16, 1953, the defendant board let a contract for the construction of the improvement and directed the construction to proceed outside the area in the benefit district, and that the acts of the defendant board in approving the plans calling for a sixty-foot right of way and in letting the construction contract were and are void. Allegations as to the issuance of temporary notes the proceeds of which were to be used in the construction need not be detailed. It was then alleged that the defendant board was threatening to take a part of plaintiff's real property in the city of Fairway as part of the sixty-

foot right of way and unless the defendant board was enjoined, plaintiffs would suffer irreparable damage. Allegations as to illegally assessed taxes to pay costs of the project need not be detailed. In substance plaintiffs sought a permanent injunction against the defendant board from proceeding with the project, from attempting to acquire right of way therefor and from levying taxes to pay the costs of the improvement. To clarify what is said later, we note the prayer of the petition did not ask for any restraining order nor for a temporary injunction and neither was ever granted.

On March 18, 1954, the plaintiffs' motion that the city of Fairway be made a party defendant and that plaintiffs be allowed to file a supplemental petition was sustained, and on April 1, 1954, a supplemental petition was filed. It was alleged therein that the city of Fairway was a city of the second class; that other temporary notes had been issued by the defendant board; that since the filing of the original petition the defendant city at the request of the defendant board was attempting to condemn the lands of plaintiffs for the use of the defendant board in order to carry out the improvement, and that the city, on March 17, 1954, instituted proceedings in eminent domain in the district court for that purpose; that the acts of the city were null and void for the reason the city had no lawful right or authority so to do. The remainder of the pleadings and the prayer are an expansion of the original petition and prayer. We note that only a permanent injunction was sought.

The board of county commissioners filed an answer containing a general denial and an allegation the cause of action was barred by the provisions of G. S. 1949, 68-701.

The city filed an answer containing a general denial and alleged at length that on March 1, 1954, it passed a resolution declaring it necessary to appropriate private property for widening and improving a city street, Mission Road; that on March 8, 1954, it passed an ordinance setting forth the condemnation for the above purpose; that on March 17, 1954, it made application to the district court, describing the land to be taken and asking for the appointment of appraisers; that the judge made an order appointing appraisers, who gave requisite notice and thereafter appraised the lands, and made report thereof and on April 14, 1954, the condemnation moneys were deposited with the city treasurer for the benefit of the owners of the lands condemned. After alleging that the report of the commissioners in condemnation had been made a matter of

record and that the city had taken possession of the condemned real estate, the city alleged the issue raised by the plaintiffs' supplemental petition had become moot.

At the trial on the issues joined, the entire evidence consisted of the admissions made by the pleadings and the public records and documents of the defendants relative to the road improvement. These various documents, as abstracted, disclose the project was initiated at some undisclosed date prior to September 2, 1952, by the filing with the board of county commissioners of a petition asking for the improvement of a certain road in the county named Mission Road from 75th Street north to Johnson Drive at a minimum width of sixty feet to be acquired by gift, purchase or condemnation, as provided by G. S. 1949, 68-703, and that it be paved at a width of 36 feet. The petition stated that Mission Road in part abutted the cities of Prairie Village and Mission Hills and passed through the cities of Prairie Village and Fairway and that those cities had approved and endorsed the proposed improvement. On September 2, 1952, the city of Fairway adopted a resolution reciting that a petition had been filed for the improvement of Mission Road; that Mission Road was a county road, part of which was within the city limits; that it was a *third class* city and under G. S. 1949, 68-706, as amended, it should apply to the board of county commissioners for assistance from the county in the continuation of the improvement from city limits to the center of the city, and it was resolved that the city should apply for such assistance.

The evidence further disclosed that on September 16, 1952, the matter came on for hearing on the petition before the board of county commissioners and it then adopted a resolution, in substance finding that the improvements prayed for were of public utility and necessary to be done; that the petition designated the road by name and fixed terminal points, type of improvement, width of roadway and was in compliance with G. S. 1949, 68-701 to 717, and amendatory acts; that proper notice had been given of the hearing, and it ordered that the improvement be made. On October 19, 1953, the board of county commissioners awarded a contract for the construction of the entire Mission Road project including that part within the city of Fairway.

The abstract contains a statement that the plans for the improvement called for a maximum width of pavement of 49 feet in a part of the city of Fairway, although the resolution called for a

pavement of 36 feet. For whatever it may be worth and whether it is of any importance in deciding the issue, we were advised at oral argument the increased width was in compliance with the demands of the state highway commission engineer. Such a demand may be made. See G. S. 1949, 68-703.

Included in the abstract is a letter of Febuary 2, 1954, from the board of county commissioners to the city expressing some doubt about the county's power to maintain proceedings to condemn property within the city. Thereafter and on March 1, 1954, the city adopted a resolution containing a series of whereas clauses setting forth precedent events and resolving that its engineers make an accurate survey of lands necessary to be appropriated and declaring the appropriation necessary and expedient for the best public interest. Although the proceedings are not abstracted it is conceded a proceeding in condemnation was instituted by the city and the necessary lands taken.

Before taking up appellants' contentions of error we note the challenge of the appellee board of the appellants' right to be heard and also its contention that the record discloses the action was not timely instituted under the requirements of G. S. 1949, 68-704, unless commenced within sixty days from the date certain proceedings were had. We are not disposed to elaborate on this for the action was commenced within sixty days from the awarding of the contract. An examination of the question compels a review of the entire record to determine whether action on the contract should be enjoined. We also note an objection by the appellees to consideration of the appeal for the reason that at no time was any restraining order or temporary injunction asked or granted, and that the improvement has now been completed and the cost paid the contractor, and the question is now moot. That objection will be considered in what is later said.

The first and pivotal question is whether, under the provisions of G. S. 1953 Supp., 68-706, the county in improving a road under the statute of which the above section is a part, had the authority to construct that part of the road lying within the. city limits of the city of Fairway, a city of the third class at the time proceedings for the improvement were initiated. Although appellants present an extended argument that the county possessed no such authority, the gist of their argument is that where such a project was to be constructed, the county's only obligation and authority was to con-

tribute *financially* to the city for the part of the road within the city and that the county had no power or authority to contract for the entire improvement.

It may be conceded that the section of the above statute is not as explicit as it might be but we think a fair analysis of it compels a conclusion that the appellants' contention cannot be sustained. The entire section is long and need not be fully reviewed. The first part deals generally with the apportionment of the cost of the improvement among the county, the township and the benefit district, for the holding of a special session of the board of county commissioners to hear complaints and the fixing of assessments within the benefit district, and the payment of assessments, none of which are here involved. The statute then states:

". . . In the event that a benefit-district road is constructed to the city limits of a city of the third class, the city officials shall apply to the board of county commissioners for assistance in the continuation of said improvement through the city, or from the end of the benefit-district road to the center of the city. The board of county commissioners shall then appropriate from the county funds, or issue bonds if necessary, to pay for fifty percent (50%) of the cost of the improvement after deducting all federal and state aid and donations, and the city at large the remaining fifty percent (50%) apportioned on an equitable ratio among the taxpayers, as prescribed by the council or other governing bodies, and may issue city bonds to pay the city's share of the cost of such improvements, unless the city council decided to pave and does pave the streets to be included in such improvement with pavement of equal quality under the law authorizing paving in such cities. In such case the county's share of improving such city street as provided herein shall be applied toward the cost of such pavement: *Provided further,* That the type and width shall be the same as constructed outside the city limits."

That the county was not limited to extending *financial* assistance, as contended for by the appellants, seems clear from the provision the city shall pay 50% of the net cost apportioned on a reasonable basis or may issue bonds to pay its share, unless it decides to and does pave the street included in the improvement. We think it clear that the statute contemplates either that the county, when the city shall so apply, may construct that part of the improvement within the city, or that the city may itself construct that part of the improvement. In the instant case, the city did apply for assistance, and under proceedings the regularity of which was not attacked, an arrangement was made for the county to do the work. Not until after the contract for construction was awarded was there any attack made. In our opinion the county had authority to con-

struct that portion of the improvement lying within the city as a part of the entire improvement project.

Appellants state as their second contention that the city of Fairway had and has no authority to condemn land for the use of the county. We think the assumption the taking was for the use of the county unduly limits the question for consideration, for the widening of Mission Road, which in the city is a city street, was for the benefit of all persons traversing it. Whether residents of the county, city or elsewhere using Mission Road through the city are in the majority need not be determined. The widening may have been of benefit to the county but certainly it was for the benefit of the city.

We agree with appellants' statement that neither the county nor the city had an inherent power of eminent domain and that neither could exercise such power unless authorized to do so. As the county did not attempt to exercise the power, it is not necessary that we discuss whether it had such power. Insofar as the city is concerned appellants do not refer to the fact that when the road improvement project was initiated the city of Fairway was a city of the third class but was a city of the second class when it instituted condemnation proceedings and in view of the statutes later mentioned and the powers conferred, we need not decide whether the power the city had when the project was initiated continued until it was completed. Cities of the third class have power to widen any street (G. S. 1953 Supp., 15-427) and are given the power of eminent domain for specified purposes and ". . . for any other necessary purpose . . ." (G. S. 1949, 15-439). Second class cities have like powers for like purposes (G. S. 1953 Supp., 14-423, and G. S. 1949, 14-435). Under G. S. 1949, 26-201, it is provided, in part, that

"Whenever it shall be deemed necessary by any governing body of any city to appropriate private property for the opening, widening, or extending any street or alley, or to condemn private property or easement therein for the use of the city for any purpose whatsoever, the governing body shall cause a survey and description of the land or easement so required to be made by some competent engineer and file with the city clerk. And thereupon the governing body shall make an order setting forth such condemnation and for what purpose the same is to be used."

Appellants direct attention to the phrase "for the use of the city" and contend that the widening is for the use of the county and not for the use of the city and therefore there is no grant of authority

to the city. In view of what has been previously said, we need not say more as the lands were taken for the benefit of the city. Under the last statute the city had the power to condemn land for widening the road or street involved. There is no contention by appellants that the procedure outlined in the last statute was not complied with fully.

Appellants' third and fourth contentions are in part directed to the allegation in the appellee city's answer that by reason of its condemnation in eminent domain having been completed, the controversy is moot and in part directed to the anticipated statement later made in the briefs of both appellees that the construction of the proposed improvement has been fully completed and the matter is moot. Appellants' third contention is that the matter of the right of the appellee city to proceed in eminent domain is not rendered moot merely because such condemnation proceedings have been had and affected owners have appealed. Appellants' fourth contention is that despite completion of the improvement, the county acted without authority insofar as the road lies in the city and the court should order the county to restore Mission Road within the city of Fairway to its former state or in the alternative, enjoin payment to the contractor for the portion of the roadway in Fairway, enjoin assessment and collection of taxes, and enjoin the use of that portion of the purported road in Fairway which remains unpaved. Except as hereafter mentioned, each of the above contentions is predicated on an assumption the county had no power to contract for the entire improvement and on an assumption the city could not provide for widening of the roadway. These assumptions are not good. An included argument that the roadway was to be paved at a width of 36 feet as fixed by the original resolution, but that in a part of Fairway where Mission Road enters Johnson Drive it was paved at a width of 49 feet, may be answered by repeating that the plans and specifications had to be approved by the state highway engineer. We are advised and it is not denied that that official made the requirement for the increased width. Another included argument is that the city and county should be enjoined from taking any of the sixty-foot right of way on which pavement has not been laid. There is nothing to indicate the city or the county did not act properly in fixing the overall width of Mission Road at sixty feet. It was not necessary that the pavement extend the full width. Room was properly left

to provide drainage, shoulders, or other works to make the improvement a completed project. We are cited to no authority holding that in an improvement project, whether of the type presently involved, or of a city street, that the governing body may take only such land as is to be paved, and in our judgment that is not the law.

In view of the issues presented, the evidence adduced, and the contentions made, we have considered the whole matter. Possibly in some aspects the matter is moot but in view of our conclusion that phase will not be further discussed.

Some reference has been made in the briefs to the fact that appeals from the proceedings in eminent domain are pending. The appellants' brief also makes reference to some action in trespass, which remains undisposed of in the trial court. We expressly refrain from any comment on these matters.

It follows from what has been said that the judgment of the trial court should be and it is affirmed.